**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | CHAPTER 13 |
| | : | |
| JUDY L. HERR, | : | BANKRUPTCY NO. 17-15272 |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION OF DEBTOR, JUDY L. HERR FOR**
**AUTHORITY TO : (1) SELL REAL PROPERTY LOCATED AT 265 WEST WALNUT STREET, MARIETTA   PA  17547 FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363 AND**
**(2) COMPENSATE REAL ESTATE BROKERS**

JUDY L. HERR, , (the "Debtor"), by and through her counsel, Alaine V. Grbach, Esquire, hereby moves this Honorable Court for authority to: (i) sell residential real property free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363 and (ii) compensate real estate brokers (the "Motion") and in support thereof, respectfully represents as follows:

**I.   JURISDICTION AND VENUE**

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The legal predicates for the relief sought herein are 11 U.S.C. §§ 105 and 363 and Fed.R.Bankr.P. 6004.

**II.   BACKGROUND**

3. On August 2, 2017, (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*. (as amended, the "Bankruptcy Code").

4. The Chapter 13 Trustee in this case is Scott Waterman, Esquire.

5. The Debtor owns certain residential real property located at 265 WEST WALNUT STREET, MARIETTA PA 17522 Street, Lancaster PA 17547 (the "Property").

6. Scott Waterman, Esquire, ("Trustee Waterman") has been appointed Trustee in this Bankruptcy.

7. The Property has been Debtor's residence for over 33 years.

8. Debtor purchased the Property with her Husband, who is now deceased.

9. The Property has grown into disrepair due to Debtor's lack of funds and her advancing age.

10. Debtor is in arrears as to her first mortgage, and has received two Loan Modifications during her bankruptcy.

11. In June of 2019, Debtor's sewer lien to her home collapsed, and due to a lack of funds, the loacal municipality performed necessary repair work.

12. Debtor has actively marketed the Property for over one month, and has received an offer to purchase her property.

13. The Debtor has received an offer to purchase the Property from JXZ REALTY, (the "Purchaser") for a purchase price of $96,500.00[1] (the "Purchase Price"). The Agreement of Sale is attached hereto as Exhibit "A" and made a part hereof.

14. All of the contingencies relating to the sale of the Property have been satisfied except for Bankruptcy Court approval.

---

[1] In accordance with the Agreement of Sale, the Purchasers have paid a deposit in the amount of $5,000.00 which shall be credited at the time of closing on account of the purchase price.

15.     III.  **THE PROPOSED SALE AND RELIEF REQUESTED**

16.     The Debtor desire to sell the Property free and clear of all liens, claims, interests and encumbrances pursuant to the provisions of the attached Agreement of Sale.

17.     Pursuant to 11 U.S.C. § 363 and in furtherance of the Debtor's efforts to liquidate the Property, the sale of the Property must be free and clear of any and all liens, claims, security interests, mortgages, pledges, charges, indentures, loan agreements, options, rights of first refusal, offsets, recoupments, rights of recovery, judgments, orders and decrees of any court or governmental entity, interest, successor, products, tax and other liabilities and claims against the Debtor or the Property, of any kind or nature, whether secured or unsecured, choate, or inchoate, filed or unfiled, scheduled or unscheduled, notice or unnoticed, recorded or unrecorded, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, known or unknown (collectively, the "Liens and Claims") except for the claim of the first mortgagee, NYMT LOAN TRUST 1, serviced through Fay Servicing, LLC (the "NYMT"), and the second position municipal lien to MARIETTA BOROUGH, (the "Marietta Borough Lien") and certain lienable expenses.

18.     The Liens and Claims shall attach to the proceeds of the sale described herein, to the extent and with the priorities provided under applicable non-bankruptcy law, as such laws may be modified by the Bankruptcy Code.

19.     The Purchase Price shall constitute the highest and best offer that the Debtor has or shall receive and shall constitute a purchase in good faith for fair value within the meaning of Section 363(m) of the Bankruptcy Code and *In Re Abbots Dairies of Pennsylvania, Inc.*, 788 F.2d 142 (3rd Cir. 1986).

20. The sale of the Property free and clear of all Liens and Claims, except for the NYMT MORTGAGE and Marietta Borough Liens, and certain lienable items, is in the best interest of both Debtor and the Estate of Debtor and is necessary in order to allow the Debtor to liquidate the Property.

IV. **THE DEBTOR HAS COMPLIED WITH 11 U.S.C. § 363**

21. By this Motion, the Debtor seeks the entry of an Order by the Court authorizing the sale of the Property free and clear of the Liens and Claims except the NYMT Mortgage, the Marietta Borough Lien, and certain lienable items and brokers' commissions.

22. Section 363(b) of the Bankruptcy Code authorizes a Debtor to sell assets. As a general rule, a Debtor must show that each of the following elements have been met before a § 363(b) sale may be approved: (i) that a sound business reason exists for the proposed transaction; (ii) the sale has been proposed in good faith; (iii) the sale price is fair and reasonable; and (iv) that accurate and reasonable notice has been provided of the transaction. *See*, *Stroud Ford, Inc.*, 163 B.R. 730 (Bankr. M.D.Pa. 1993). Here, the proposed sale of the Property meets each of these four (4) factors.

(a) **The proposed sale is supported by sound business reasons.**

23. Courts have made it clear that a trustee or debtor's showing of a sound business justification need not be exhaustive, but rather a trustee is "simply required to justify the proposed disposition with sound business reasons." *See*, *In re Baldwin United Corp.*, 43 B.R. 898, 906 (Bankr. S.D.Ohio 1984). Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. *See*, *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). *See also*; *Industrial Valley Refrig. & Air Conditioning Supplies, Inc.*,

77 B.R. 15 (Bankr. E.D.Pa. 1987) (adopting *Lionel* reasoning). When considering whether a trustee has demonstrated a sound business justification for a proposed sale of assets under § 363(b) of the Bankruptcy Code, a court "should consider all salient factors pertaining to the proceeding." *See*, *Lionel*, 722 F.2d at 1071. In evaluating these and other pertinent factors, the court should bear in mind that the overriding goal is "to further the diverse interests of the trustee, creditors and equity holder, alike." *See*, *Id*.

24. The Debtor believes, and therefore avers, that there is good and sufficient justification for the Debtor to sell the Property and is in the best interest of the estate for this Court to grant the Motion in that the Property is subject to a first mortgage foreclosure as well as a municipal tax lien; Purchasers have financing in place and can settle at any time; furthermore, allowing the Property to remain in its current condition may cause additional damage to the Property itself and potential liability to Debtor.

25. It is Debtor's understanding that the Purchaser intends to rehabilitate the property.

26. Accordingly, as the foregoing discussion demonstrates, the Debtor believes that the sale of the Property is justified by sound business reasons and is necessary to preserve and protect the Property and ensure Debtor receives a fresh start.

**(b)     The sale has been proposed in good faith.**

27. "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings." *See*, *In re Abbotts Dairies Pennsylvania, Inc.*,788 F.2d 143, 147 (3d Cir. 1986). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."

*See*, *Id*.

28. The proposed sale of the Property is an arms-length transaction, the Debtor has no relationship with the Purchaser and the Purchase Price is fair and reasonable.

29. The Debtor believes the Purchase Price is fair and reasonable,.

30. The Property was listed with Cavalry Realty, LLC ("<u>CAVALRY REALTY</u>"), shown to numerous prospective purchasers, and the offer received from the Purchasers is the highest and best offer received to date.

31. **Accurate and reasonable notice of the sale will be provided**

32. In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside of the ordinary course of business may be by private or by public auction. *See*, Fed.R.Bankr.P. 6004(f)(1).

33. Pursuant to Bankruptcy Rule 6004, notice of a proposed use, sale, or lease of property required under Bankruptcy Rule 2002(a)(2) must include the time and place of any public sale, the terms and conditions of any private sale, and the time fixed for filing objections. *See*, Fed.RBankr.P. 2002(c)(1). Moreover, notice of a proposed use, sale, or lease of property is sufficient if it generally describes the property.

34. Section 363(f) of the Bankruptcy Code provides:

> The trustee ( herein the Debtor due to the Abandonment Order may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2)    such entity consents;

    (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4)    such interest is in bona fide dispute; or

    (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See*, 11 U.S.C. § 363(f).

35. In the case at hand, the Property is encumbered by the NYMT Mortgage and Marietta Borough Lien in the amount of $5,541.35, possible outstanding real estate taxes, and municipal lienable items.

36. At closing, the Debtor prays for an Order of distribution of the proceeds from the sale from the Property as follows:

    (a) First, the amount needed to satisfy the outstanding property tax and municipal liens due the applicable governmental authorities;

    (b) Second, the normal and customary closing costs including, but not limited to, transfer taxes and recording fees;

    (c) Third, the current balance owed to NYMT Mortgagor;

    (d) Fourth, the balance, if any, to Debtor.

37. Thus, the Debtor submits that the sale of the Property, free and clear of the Liens and Claims, satisfies the statutory prerequisites of § 363(f) of the Bankruptcy Code. Accordingly, the Trustee seeks the entry of an Order authorizing the sale of the Property pursuant to § 363 of the Bankruptcy Code.

## V.     BROKER COMPENSATION

**38.** The Listing Agreement between Debtor and CAVALRY REALTY provides that CAVALRY REALTY'S commission would be six (6%) percent of the gross sales price. In the event of a co-broker arrangement, the commission would be split equally between CAVALRY REALTY and the co-broker; As such, the aggregate commission is $5,790.00 per the attached Seller's Estimated Costs.

**39.** CAVALRY REALTY has represented, to the Debtor, that they were referred to the Debtor by NYMT Mortgage, and to that end, CAVALRY REALTY was obligated to pay NYMT Mortgage a 30% finders fee (the same representation was made to undersigned counsel on September 24, 2020); CAVALRY REALTY has forwarded a "Referral Fee Form" between itself and one Gen Stone Realty, which is attached hereto and made a part hereof as Exhibit"B", which indicates to the contrary.

**40.** Debtor believes and therefore avers that the 30% referral fee belongs to the Debtor, in that she never has had any dealings with one GenStone Realty, and as the attached Referral Information Sheet indicates, GenStone Realty was dealing with her dead husband.

41. Based on the foregoing, the 30% referral fee in the amount of $868.50 shall be paid to, and inure to, Debtor and not CAVALRY REALTY or GenStone Realty.

## VI.    CONCLUSION

37. The Debtor avers that the sale is in the best interest of all of the Estate's creditors.

The Debtor further avers that the sale satisfies the Bankruptcy Code.

**WHEREFORE,** the Debtor respectfully requests that this Honorable Court enter an Order (i) authorizing the sale of the Property; (ii) allowing the sale of the Property free and clear of the Liens and Claims; and (iii) providing such other and further relief as this Honorable Court deems just and reasonable.

                              **Respectfully submitted,**

By: /s/ Alaine V. Grbach
      ALAINE V. GRBACH, ESQUIRE
      675 Estelle Drive
      Lancaster, PA 17601
      (717) 898-8402
      Attorneys for the Debtor

Dated: September 25, 2020